UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

    v.

**ED GEORGE PARENTEAU,**

    Defendant.

**AFFIDAVIT**

10-CR-320(TJM)

STATE OF NEW YORK   :
                      :   SS.:
COUNTY OF ALBANY    :

I, **Mark Kleist**, state as follows:

1. That I am a Syracuse Police Department Detective currently serving as a Task Force Officer with the Federal Bureau of Investigation. I have worked for the Syracuse Police Department for 20 years. I am currently assigned to the FBI's Syracuse, New York Office where I work on the Joint Terrorism Task Force (JTTF) which is based in Albany, New York.

2. This affidavit is submitted in opposition to the defendant's motion(s) to suppress items seized from his residence on June 22, 2010.

3. In or about the Spring of 2010, the Albany JTTF began a mail fraud investigation of the defendant, and his associate, Jeffrey Burfeindt. Generally,


GOVERNMENT EXHIBIT 3

investigators believed that the defendant and Mr. Burfeindt were engaged in a mail fraud conspiracy in which they would mail, file, and serve various fraudulent financial demand letters, judgments and liens against numerous municipal employees of the Town of Lloyd, its police force, and Ulster County.

4.  During the investigation, investigators obtained information that the defendant was residing in an apartment located at 120 Mountain View Road, apartment no. 207, Sherburne, New York.  On June 18, 2010, S/A West presented (to Magistrate Judge David Homer) an application to search the aforementioned residence.  Included within the search warrant application was information that investigators believed justified a "no knock" entry of the premises.  In particular, investigators were concerned for their safety.

5.  On June 18, 2010 Magistrate Judge Homer signed a "no knock" search warrant permitting investigators to search the defendant's residence.  The face of the search warrant signed by Judge Homer contained the words "** NO KNOCK **".

6.  Prior to presenting the search warrant application to Judge Homer, investigators conducted surveillance of the defendant's residence and took still photographs of the residence.  The photographs contained in Government Exhibit 4 (GE-4), depict the defendant's residence prior to the date on which the search warrant application was presented to Judge Homer.

7. At approximately 8:00 a.m. on the morning of June 22, 2010, your affiant, FBI Special Agents Chris West, James Kolbe and Brandon Goad, and TFO Raymond Nafey, now in possession of the signed search warrant, assembled outside of the closed door leading into the defendant's residence. Your affiant then shouted "search warrant" and the door (depicted in the photographs marked as GE-5) was breached with a one-person ram. The door opened after the first strike of the ram. S/A West was the first individual to cross the threshold and go inside of the residence.

8. As S/A West entered the defendant's residence he announced the presence of law enforcement officers. Investigators initially encountered a small set of steps that lead to a bathroom. (See GE-5). The bathroom door was open and investigators witnessed the defendant sitting on the toilet, wearing nothing but a pair of shorts that were around his ankles. Investigators also witnessed a woman (later identified as the defendant's common law wife) using the sink next to the toilet on which the defendant was sitting. S/A West instructed the defendant's common law wife to move toward the investigators. When she was with the investigators, S/A West instructed the defendant to remain still so that investigators could determine if there were any additional individuals in the residence or any threats to the investigators' safety. Once the investigators determined that the residence was secure, the defendant was permitted to get dressed. Thereafter, the previously mentioned investigators, as well as additional investigators, began searching for the items

referenced in Attachment A of the search warrant. While the investigators conducted the search, S/A West interviewed, separately, the defendant and his common law wife.

9. Following the interview of the defendant, he was arrested pursuant to an arrest warrant previously issued by Judge Homer. No items were seized from the defendant's person during the search of his residence or during his arrest.

10. The search of the defendant's residence lasted approximately four hours. Investigators seized a number of items pursuant to the search warrant. Investigators also took numerous still photographs while the search was in progress. Some of the photographs taken on June 22, 2010 are contained in GE-5.

11. While it is not clearly captured in the photographs contained in GE-5, there was minimal damage to the door and door frame through which investigators entered the defendant's residence. In particular, part of the molding surrounding the door jam was broken and the door itself contained a mark from the ram. The door did not come off its hinges and was still operable at the time investigators departed the search site.

12. As investigators departed the defendant's residence, an inventory of seized items and a copy of the search warrant was left with the defendant's common law wife.

*[signature: Mark Kleist]*
Mark Kleist
Task Force Officer
Federal Bureau of Investigation

SWORN TO BEFORE ME THIS
30th Day of September, 2010

*[signature: Paula D. Briggs]*
Notary Public

PAULA D. BRIGGS
Notary Public, State Of New York
No. 6068241
Qualified In Onondaga County
My Commission Expires 12/31/20 13